UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| DAVID C. EATON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 07-215-JMH |
| v. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | |
| COUNTY GOVERNMENT, et al., | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*

This Court has ordered Plaintiff to show cause why his §
1983 claim, which is based on alleged violations of the Fourth
and Fourteenth Amendments, should not be dismissed for failure
to state a claim [DE 77].  He has filed a Response [DE 79], as
well as a Motion for Summary Judgment [DE 78, 80].  Defendants
have filed a Response [DE 84] to Plaintiff's Motion for Summary
Judgment, which the Court deems timely filed in light of their
Motion for an Extension of Time [DE 83] to file their Response,
limiting their arguments solely to the issue of whether the
Fourth Amendment applies in this instance and whether Plaintiff
can, as a matter of law, prevail on his claim by simply pointing
to six elements that he believes to be necessary to a
constitutional policy and procedure for urinalysis and which he
believes to be absent from the policy and procedure applicable
at CAP.  Eaton has also filed a Reply [DE 85] in support of his

Motion for Summary Judgment.  The Court has carefully considered all of these pleadings and concludes that the show cause order shall be discharged and the Motion for Summary Judgment shall be denied.

In August 2005, Plaintiff filed a Verified Petition for Custody, Timesharing, and Child Support in the Fayette Circuit Court, against the mother of his child. [DE 14-3]. In October 2005, the parties to that action entered into an agreed order, which reserved the issue of custody pending an evaluation by the Friend of the Court, set a time share schedule so that Plaintiff might see the child, and established child support to be paid by Eaton. [DE 14-4]. After the mother of Plaintiff's child alleged that Plaintiff had significant substance abuse issues, both parties – Plaintiff and the child's mother - were ordered to complete a drug test at the Community Alternative Program (hereinafter, "CAP") in January 2006. [DE 14-6; DE 68-3 at 2].

Generally, CAP is part of the Lexington-Fayette Urban County Government (hereinafter, "LFUCG") Division of Community Corrections and offers an alternative to incarceration for non-violent offenders. [DE 14-9 at ¶¶ 2-3]. Services provided by CAP include electronic monitoring, day reporting, court-ordered community service, and drug and alcohol testing. [*Id.* at ¶ 3]. The drug testing unit provides drug and alcohol testing for the Division of Community Corrections, when testing is ordered by

2

the judicial system, and for other agencies. [*Id.* at ¶ 4]. The program is non-profit, and any income realized must be invested back into the program in its entirety. [*Id.* at ¶ 5].

During Plaintiff's first test at the CAP office on January 6, 2006, he tested positive for cocaine and opiates. [DE 68-3 at 2]. The mother of his child then filed motions seeking supervised visitation and continued compelled drug testing from Plaintiff. [*Id.* at 3]. Accordingly, on January 27, 2006, the Fayette Circuit Family Court ordered Plaintiff to undergo random drug and alcohol testing three times a week at the CAP office. [*Id.* at 3; DE 14-7]. Although Plaintiff filed a motion for relief from this testing on February 6, 2006, he did not allege that the January 6 test was inaccurate; rather, he cited concerns that the testing interfered with his work schedule and child visitation. [DE 68-3 at 3]. On February 15, 2006, a report that Plaintiff testified positively for oxymorphone at the Urgent Treatment Center ("UTC") was placed in the record, and on February 22, 2006, an Order was entered requiring Plaintiff to test twice a week in order to visit his child. [*Id.*].

Indeed, it was not until February 27, 2006, that Plaintiff filed a motion to strike the drug screening results, claiming that he had never used drugs. [DE 68-3 at 3]. He alleged in that motion that the officer who conducted his drug test at CAP on January 6, 2006, was incarcerated for altering drug test results

3

of prison inmates, pointing to a Lexington Herald-Leader article from February 21, 2006. [*Id.*]. His motion was overruled on March 7, 2006, and no appeal was taken. [*Id.* at 4]. From March to June of 2006, Plaintiff tested positive for cocaine use at least five times at the CAP office. [*Id.*]. Further, between the dates of July 5, 2006, and July 21, 2007, he tested positive for alcohol use at CAP on at least twenty occasions. [*Id.*].

After July 21, 2007, Plaintiff did not return to the CAP office, choosing to go to the UTC exclusively. [*Id.*]. At the UTC, Plaintiff again tested positive for oxymorphone in September 2007 and for cocaine on January 27, 2007, March 3, 2007, and March 10, 2007. [*Id.*]. The mother of Plaintiff's child was granted permanent sole custody on October 24, 2007, at which time Plaintiff was allowed supervised visits on Sundays if he could demonstrate via Breathalyzer that he was not intoxicated and continued to test at the UTC each Sunday. [*Id.*].

Plaintiff filed a Complaint in this Court on July 9, 2007, raising claims for injunctive and declaratory relief and a claim under 42 U.S.C. § 1983 alleging that his Fourth Amendment rights were violated as a result of unconstitutional drug and alcohol testing at CAP. [DE 1]. Named as Defendants are Lexington-Fayette Urban County Government ("LFUCG"); Mayor Jim Newberry, in his official capacity; and Mary Hester, Assistant Director, Bureau of Programs, Services & Community Placement, Division of

Community Corrections, in both her official and individual capacities. [DE 1].

Defendants filed a Motion for Summary Judgment in 2008. [DE 14]. Because Plaintiff's state suit was still pending at the time he filed his federal complaint, this Court dismissed his claims for injunctive and declaratory relief and stayed his § 1983 claim for monetary damages pursuant to the Younger abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971); [DE 22]. Plaintiff then pursued his Fourth Amendment claim in the Fayette Circuit Family Court. [DE 68-2; 68- 3]. He filed a motion in August 2009 seeking to implead Defendant LFUCG as a third party defendant to pursue a declaratory judgment that CAP testing is unconstitutional. [DE 68-3 at 13]. After the family court denied Plaintiff's motion, he filed a second motion in March 2010 asking the court to suppress all of the CAP drug test results because they were secured in violation of his Fourth Amendment rights. [DE 68-2]. The family court denied Plaintiff's motion on May 29, 2010, because it found that 1) Plaintiff did not present a justiciable controversy, since he was no longer required to test at CAP and had not tested at CAP in over two years; and 2) Plaintiff had waived the right to object to the CAP test results, since it had been four years since the court first ordered him to test at CAP and two years since his last test. [DE 68-3 at 6—8]. Plaintiff appealed to the Kentucky

5

Court of Appeals which affirmed the family court on the Fourth Amendment issue, albeit without addressing the merits of Plaintiff's claim. [DE 68-13]. Specifically, citing grave procedural defects in Plaintiff's appellate brief, the court struck the brief for failure to comply with Kentucky Civil Rule of Procedure (CR) 76.12. [DE 68-13]. The Kentucky Court of Appeals denied Plaintiff's petition for rehearing on November 20, 2012. [DE 68-15]. Plaintiff then appealed to the Kentucky Supreme Court, but it also denied his motion for discretionary review on March 13, 2013. [DE 68-17]. Following the Kentucky Supreme Court's ruling, this Court instructed the parties to file briefs regarding the propriety of lifting the stay on Plaintiff's § 1983 claim in this Court. [DE 67].

After that briefing, this Court lifted the stay on Plaintiff's claim for monetary damages under 42 U.S.C. § 1983 and required the parties to show cause why Plaintiff's § 1983 claim should not be dismissed for failure to state a claim upon which relief could be granted, querying whether the claim was viable only under the Fifth Amendment instead of the Fourth Amendment and Plaintiff's claim must, therefore, fail. [DE 77.]

## II.

Prior to the current round of briefing, the Court understood Plaintiff's claim to be based solely upon on his allegation that the drug testing to which he was subjected at

CAP was unreliable and produced inaccurate results, resulting in his injury. [DE 68-2 at 6—7]. The Court queried whether this, in fact, presented a claim under the Fifth and Fourteenth Amendments rather than the Fourth and Fourteenth Amendments and whether those actions were attributable to the defendant municipality.[1] A plaintiff asserting a Section 1983 claim on the basis of a municipal custom or policy must identify the policy, connect the policy to the municipal actor, and show that the particular injury was incurred because of the execution of that policy. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). A plaintiff's failure to demonstrate constitutional harm defeats municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986).

In his Response, Plaintiff has now explained at some length that, in fact, his claim is cognizable under the Fourth and Fourteenth Amendments because he contends that the reliability

---

[1] In an effort to further understand his claim, the Court considered Plaintiff's reference to a newspaper article from the Lexington Herald-Leader on February 21, 2006, which concerned a former corrections officer who was fired for falsifying drug test results of prison inmates, presumably at CAP and expressed concern about the viability of his claim against the municipality and its agents in light of the fact that he appeared to seek damages based on actions taken ultra vires by someone administering the drug tests at CAP. In Plaintiff's Response to the Order to Show Cause, Counsel for Plaintiff seems puzzled by the Court's rationale for attaching to its July 31, 2013, Order a copy of that newspaper article and states that Plaintiff "does debate" whether "inaccuracies can occur outside of the Defendant-City's testing program" as relates to this case. Plaintiff misunderstands the Court's rationale for attaching a copy of the article, which was not to demonstrate anything other than to let the parties know that the Court had finally figured out what Plaintiff was talking about in one of his earlier pleadings.

of all of the CAP drug testing to which he was subjected is in question as a result of the policies and procedures in place during the relevant time and which, he claims, render the testing an unreasonable search and seizure in violation of the Fourth Amendment. [DE 68-2 at 7].  Plaintiff makes no objection to the requirement that he submit to drug testing in the course of his custody proceedings and concedes that the requirement is reasonable for the purposes of the Court's analysis.  Neither, frankly, does he object to the use of urinalysis in testing for drug use, *per se*, nor even most of the conditions under which his urine samples were provided.  Notably, he does not complain of a lack of privacy or other unreasonable conditions imposed upon his person during the collection process.

Rather, his sole concern is with whether the testing to which he was subjected at CAP constituted an unreasonable search because of the procedures utilized when Defendants' agents accepted his sample and in the processes which took place after the collection of his urine.  He alleges that the policies and procedures set in place by the municipality were insufficient to ensure the integrity of the chain of custody for his sample and, ultimately, reliable analysis of the samples provided.  He contends that he will be able to demonstrate that he was injured by testing conducted pursuant to those procedures and guidelines.

8

The Court now appreciates that it is this aspect of the Fourth Amendment analysis that will apply in this case. As the Court understands his claim, he seeks monetary damages because of the unreasonableness of the search, i.e., the indignity imposed upon his body by virtue of an intrusive "search" for bodily fluids, but his argument is even narrower than that. He contends that the intrusion upon one's body during such a search is reasonable only insofar as there is a reasonable hope of returning the information sought. In this instance, the information sought is whether or not Plaintiff had been using illegal drugs during a given time frame prior to testing. He contends that the city's policies and procedures applicable to the collection and testing of urine at CAP were inadequate to maintain and analyze the urine specimens in a way that would ensure accuracy of test results and reporting of test results, even though testing was performed in compliance with those policies and procedures. As such, he claims that he was subjected to an unreasonable search because there was a real possibility that an inaccurate result could occur, whether because of contamination or a failure in the performance of the testing, for example.

Accordingly and upon reflection, the Court agrees that his theory of the case withstands the arguments for dismissal

9

proposed by the Court, and the order to show cause shall be discharged.

## III.

The Court next turns its attention to Plaintiff's arguments set forth in support of his Motion for Summary Judgment. Again, Plaintiff alleges that he was harmed because of testing performed in compliance with a municipal policy or procedure which was the moving force behind the violation alleged. He argues that LFUCG's policy concerning the provision and execution of drug testing at CAP is, itself, what results in unconstitutional testing at CAP. Specifically, he argues in his Motion for Summary Judgment that the policy and procedures set forth by LFUCG fail to provide for a constitutionally permissible urinalysis screening. He argues that in order to for a collection and testing protocol to pass constitutional muster under Fourth Amendment search and seizure jurisprudence, including *Schmerber v. Calif.*, 384 U.S. 757 (1966), *Treasury Emp. Union v. Von Raab*, 489 U.S. 656 (1989), *Skinner v. Ry. Exec. Assoc.*, 489 U.S. 602 (1989), and *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995), there must be a mechanism in the policy and procedures applicable to a testing protocol to ensure a proper chain of custody, the employment of specifically trained and licensed collection and testing personnel, an appropriate method of analysis, provisions for protection

10

against specimen tampering, the certification of testing facilities, and the requirement of donor anonymity following sample collection. He contends that these elements are lacking in both the policy and procedure which governs testing at CAP and, therefore, in the testing performed at CAP.

The Court has reviewed his arguments and concludes that it is too early to determine whether relief is warranted as a matter of law. Plaintiff asks the Court to conclude that all testing must have all of the very same qualities as those previously adjudicated in order to be acceptable under the Fourth Amendment. The case law does not provide for that conclusion. While Plaintiff generally cites to opinions to support his argument, he provides no specific citations to any decisional authority that states a testing program only complies with the Fourth Amendment if it mirrors the procedures utilized by the programs already blessed by the courts. Certainly the cases on which he relies provide guideposts, and this case law may be relevant to the Court's inquiry in this matter as it proceeds. Further, at this point in the litigation, Plaintiff has offered no credible evidence for purposes of Rule 56 that establish that CAP's drug screening program is unreliable beyond his mere speculation and conjecture that the program must be deemed unreliable because it does not mirror that testing programs utilized in the cases to which he cites. Thus, the

11

Court is unwilling to conclude that the CAP testing is unconstitutional as performed in compliance with the policies and procedures set forth by the municipality simply because those policies and procedures may not have all of the elements found to be constitutional in other cases.  The Court imagines a scenario where, for example, a subset of those elements may be sufficient to make a search reasonable, or there may be additional elements in the policies and procedures which, while not present in other matters examined by the courts, yield the conclusion that the testing is reasonable under the Fourth Amendment.

**IV.**

Finally, as a housekeeping matter, the Court has addressed Defendants' arguments from its Motion to Dismiss [DE 69] and Plaintiff's Motion to Lift Stay [DE 70] in its Memorandum Opinion and Order [DE 77], although it failed to indicate at the conclusion of it that the Motion to Dismiss would be denied and the Motion to Lift Stay would be granted for the reasons stated in that Memorandum Opinion and Order.  Accordingly, the Court will do so in the order language set forth below.

Accordingly, **IT IS ORDERED**:

(1)  That Defendants' Motion to Dismiss [DE 69] is **DENIED**;

(2)  That Plaintiff's Motion to Lift Stay [DE 70] is **GRANTED**;

(3)   That the stay set in place by this Court's September 12, 2008, Memorandum Opinion and Order [DE 22] is **LIFTED**, nunc pro tunc, as of July 31, 2013.

(4)   That the Court's Show Cause Order [DE 77] is **DISCHARGED**;

(5)   That Defendants' Motion for an Extension of Time [DE 83] is **GRANTED** and their Response to the Motion for Summary Judgment [DE 84] is **DEEMED** timely filed;

(6)   That Plaintiff's Motion for Summary Judgment is **DENIED** [DE 78, 80].

This the 31st day of March, 2015.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge