UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

DAVID C. EATON,                      )
                                     )
        Plaintiff,                   )
                                     )    Civil Case No. 07-215-JMH
v.                                   )
                                     )
LEXINGTON-FAYETTE URBAN              )
COUNTY GOVERNMENT, et al.,           )    **MEMORANDUM OPINION & ORDER**
                                     )
        Defendants.                  )

*** 

This matter is before the Court upon Defendants' Motion for Summary Judgment [DE 91]. Plaintiff seeks leave to file a response on paper and for leave to file his Response out of time, citing an unspecified technical failure that prevented his counsel from filing his Response electronically or in a timely fashion [DE 92]. The Court will grant his motion for leave to file and will consider his tendered Response [DE 92-6]. The Court being adequately advised, no reply in support of Defendant's Motion for Summary Judgment [DE 91] is necessary. Rather, the Motion for Summary Judgment will be granted, and Plaintiff's claims shall be dismissed.

**I.**

The background in this case has been set forth several times in the course of litigation, and the Court declines to repeat it here, instead incorporating those portions of previous

orders by reference as it is necessary to make sense of the motion before it. [*See*, *e.g.*, DE 22, 77, and 86.]   In short, Plaintiff filed a Verified Petition for Custody, Timesharing, and Child Support in the Fayette Circuit Court, against the mother of his child, in August 2005. [DE 14-3]. As part of that proceeding, Plaintiff was ordered to complete drug testing at the Community Alternative Program (hereinafter, "CAP") as a condition of visitation. [DE 14-6; DE 68-3 at 2].   CAP is part of the Lexington-Fayette Urban County Government (hereinafter, "LFUCG") Division of Community Corrections and offers a variety of services, including drug and alcohol testing ordered by the courts and other agencies. [DE 14-9 at ¶¶ 2-3].  Plaintiff completed testing at CAP on a number of occasions between January 6, 2006, and July 21, 2007, providing a urine sample for testing at the facility.   On a number of occasions, his test results were positive for drugs, which impacted his opportunities for custody and visitation with his child as a result of the Fayette Family Court's rulings.

Plaintiff filed a Complaint in this Court on July 9, 2007, seeking injunctive and declaratory relief and a claim under 42 U.S.C. § 1983 alleging that his Fourth Amendment rights were violated as a result of unconstitutional drug and alcohol testing at CAP. [DE 1; *see also* DE 22 (Memorandum Opinion and Order, dated September 12, 2008, dismissing claims for certain

2

relief against Defendants)]. Plaintiff avers that his right to be free from unreasonable searches was violated by the testing policies and procedures in place at CAP because the handling and analysis of his urine specimens were inadequate to ensure the accuracy and reliability of the test results. Now, Defendants seek summary judgment, arguing that a portion of Plaintiff's claim is barred by the statute of limitations applicable to actions brought pursuant to 42 U.S.C. § 1983 and that Plaintiff's claim otherwise fails as a matter of law.

In support of their argument, Defendants have presented the policies and procedures with respect to the provision and handling of specimens at CAP that were in place at the time of Plaintiff's testing as an exhibit to the affidavit of Major Edye Dabnye, the Bureau Manager of Inmate Management, Division of Community Corrections of LFUCG, which includes CAP. The evidence demonstrates that a simple but, according to LFUCG, effective chain of custody begins at CAP with the documentation required of participants who appear for testing, from which labeling information is drawn and printed on labels which are, in turn, affixed to the specimen cup prior to testing. CAP also requires the use of an integrity seal, which bears the participant's identifying information written in his own hand, to safeguard the specimen provided until it is placed in a labeled test tube in which the urine is actually tested. Per

the policies and procedures, the labeled and sealed urine specimens are then stored in the same locked room in which the drug and alcohol testing equipment is maintained, with access to limited personnel, until the urinalysis takes place in the EMIT[®] II Plus testing device by trained and certified personnel or, during an employee's training period, under the observation of trained and certified personnel.

CAP personnel have access to professional technical assistance regarding the equipment and testing and can consult with a toxicology professional if needed. Only positive test results, confirmed by a second EMIT[®] II Plus test per CAP policies and procedures, are reported to the court that has ordered or the agency that has requested testing. If desired, a testing participant may request that positive test results be sent to an independent laboratory for Gas Chromatography Mass Spectrometry (GC/MS) confirmation testing at his expense, at which time the urine specimen would be sent to the outside laboratory in keeping with the policies and procedures for the transfer.[1]

Defendant does not dispute these facts, except to argue that these policies and procedures are insufficient to secure his right to be free from unreasonable searches in violation of

---

[1] Plaintiff never requested outside testing for the samples, so there is no need for the Court to consider the reasonableness of the procedures set in place for maintaining a chain of custody in those instances.

the Fourth Amendment.  As set forth below, the Court disagrees with his assessment of the matter, and his claims shall be dismissed.

## II.

Summary judgment is appropriate when it is shown that "there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the evidence is viewed in the light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party must present evidence sufficient to create a genuine issue of material fact for trial. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002).

The "mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, the non-moving party cannot merely rest on his pleadings. *Id.* "Mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). And, "the Court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court

to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) (citing *Leary v. Livingston Cnty.*, 528 F.3d 438, 443-44 (6th Cir. 2008)). Further, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Thus, the Court should determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . ." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581-82 (6th Cir. 1992) (quoting *Anderson*, 477 U.S. at 252); *see also Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002)("There must be evidence on which the jury could reasonably find for the non-movant") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.

As an initial matter, the Court agrees with Defendants that Plaintiff's claims prior to July 9, 2006, are time-barred. The statute of limitations on claims pursuant to 42 U.S.C. § 1983 in Kentucky is the one year limitations period in K.R.S. § 413.140(1)(a). *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *see also Harper v. Jackson*, 293 Fed. App'x 389, 391, fn. 1 (6th Cir. 2008) (unpublished) (applying one year

statute of limitations to claim of unlawful search and holding claim accrued on date of search). Plaintiff insists that the statute of limitations is tolled for all of his claims by virtue of the continuing violation doctrine. However, "[c]ourts have long distinguished continuing violations, which toll the applicable statutes of limitations, from repetitive discrete violations, which constitute independently actionable individual causes of action." *Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007). *Bowerman v. Int'l Union, United Aerospace and Agric. Implement Workers of Am. Local No. 12*, 646 F.3d 360, 366 (6th Cir. 2011) ("discrete acts [which the plaintiffs were immediately aware] when they occurred . . . do not constitute a continuing violation.") Plaintiff filed his Complaint on July 9, 2007, and alleges discrete acts – individual drug tests which he alleges were conducted in violation of his rights under the United States Constitution. Accordingly, Plaintiff's claims based on the discrete acts which occurred prior to July 9, 2006, are barred by the one year statute of limitations as he failed to seek relief in a timely fashion.

## IV.

Plaintiff's remaining claims against LFUCG and Defendants Mary Hester and Jim Newberry, in their official capacity, for

testing which occurred after July 9, 2006, also fail.[2]  In order to recover against LFUCG, as well as Hester and Newberry, in their official capacities, Plaintiff must show that the alleged violations of his civil rights occurred pursuant to and as a direct result of an official and unconstitutional LFUCG policy, practice, or custom; there can be no liability under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs., City of New York*, 436 U.S. 658, 691 (1978); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985).  Plaintiff must demonstrate a direct causal connection between a policy or a custom of the Government and the Plaintiffs' alleged injuries. *Tuttle*, 471 U.S. at 823; *Johnson v. Hardin Cnty., Kentucky*, 908 F.2d 1280, 1285 (6th Cir. 1990). A plaintiff's failure to demonstrate constitutional harm defeats municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Looking at matter in the light most favorable to Plaintiff, the non-moving party, there are insufficient facts from which to conclude that a reasonable jury could return a verdict in his favor, and summary judgment in favor of Defendants LFUCG and

---

[2] Hester served as the Assistant Director, Bureau of Programs, Services & Community Placement, Division of Community Corrections, Lexington-Fayette Urban County Government, which encompassed CAP at the time Plaintiff was subject to testing at the facility.  [DE 14-9.]  The official-capacity suit against her represents "another way of pleading an action against an entity of which an officer is an agent," here, LFUCG.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  The same is true of Plaintiff's claims against Jim Newberry, in his official capacity as the Mayor of LFUCG.

Defendants Hester and Newberry, in their official capacities is appropriate at this time.

Plaintiff avers that his Fourth Amendment right to be free from unreasonable search was violated by the drug testing conducted by CAP because the handling and analysis of his urine specimens were inadequate to ensure the accuracy and reliability of the test results.[3]   In their Motion, Defendants argue that Plaintiff cannot set forth facts from which a reasonable jury could conclude that CAP's policies and procedures were unreasonable and reach a verdict in Plaintiff's favor. Plaintiff argues that the CAP policies and procedures are unreasonable because they fail to match up with what he insists is the sole yardstick against which a urinalysis policy and procedure's reasonableness can be measured.

Specifically, Plaintiff argues that the Supreme Court held in *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 661 (1989) (examining drug-testing program to analyze urine specimens of United States Customs Service employees who applied for promotion to positions involving interdiction of illegal drugs and required them to carry firearms or handle classified materials), that urinalysis testing policies and procedures pass

---

[3] Notably, Plaintiff concedes that it was reasonable to require him to consent to testing, as a general proposition, during the course of the custody proceedings before the Fayette Family Court, and he does not argue that there was an unreasonable intrusion into his privacy by virtue of the collection method used by CAP.

constitutional muster under the Fourth Amendment only when they include a specific "documented 'chain of custody'" procedure and testing in an independent laboratory where a licensed physician interprets and evaluates positive test results together with the subject's medical history or other biomedical information – all precisely as described in *Von Raab*. The Court has carefully considered the case and concludes that the *Von Raab* court did not so hold. Nor has Plaintiff pointed the Court to any case law to support the proposition that only hallmarks of constitutionally reasonable urinalysis testing in any situation, let alone in the context of determining whether visitation with a child is appropriate by a family court presiding over a custody dispute, are those that are identical to those found in the *Von Raab* testing policies and procedures. Without something more, Plaintiff cannot show that the CAP policies and procedures are, somehow, *per se* unreasonable under the Fourth Amendment in light of the Supreme Court's holding in *Von Raab*.

Plaintiff makes only a conclusory argument that samples provided to CAP are unreasonably susceptible to contamination or falsification of results by individuals tested at or employed by CAP in the absence of policies and procedures identical to those described in *Von Raab*. He offers, however, no actual evidence to support his argument that the CAP policies and procedures in place at the time of his testing were so flawed as to render

10

them an unreasonable and, thus, unconstitutional search with reference to the Fourth Amendment.[4]

In the absence of admissible evidence or case law which would permit a verdict in his favor on the undisputed facts presented by LFUCG and Hester and Newberry, in their official capacities, Plaintiff's suspicions and conclusory arguments are insufficient to set forth a case from which a reasonable jury could conclude that his constitutional right to be free from an unreasonable search was violated by testing at CAP by virtue of the policies and procedures in place.  The Court expresses no opinion on whether CAP's procedures would be found constitutional under a different sort of attack than Plaintiff presents, but a reasonable jury could conclude that CAP's procedures and protocol are reasonable on the only facts presented and, thus, constitutional as the matter has been presented to this Court.  Defendant's Motion for Summary Judgment shall be granted, Plaintiff's claims against Defendants

---

[4] Without any supporting evidence, he suggests by and through counsel that specimen cups are not maintained in a way that would prevent contamination prior to collection and contends that the machine used to conduct the tests at CAP is set or calibrated in a way that could result in inaccurate test results.  Plaintiff also suggests that the procedures and protocols were flawed as he was unable to seek retesting because he was not provided results, but he fails to account for the fact that he, in fact, learned that his test results were positive for substances of concern through some sort of procedure in the family court after which he could have sought to have samples reviewed.  In any event, he presents no evidence from which the Court could ascertain when and what he learned or did not learn in the course of the testing process.  In the absence of some sort of admissible evidence to support the factual basis for any of these arguments, the Court considers them no further.

LFUCG and Hester and Newberry, in their official capacities, shall be dismissed.

## V.

Finally, the Court considers Plaintiff's claim against Mary Hester, in her individual capacity. Plaintiff has already conceded that he does not wish to pursue the claim against Hester, in her individual capacity [*see* DE 85 at 8, PageID #1453-54], which would ordinarily result in a dismissal of the claim without prejudice, but the Court concludes that it is appropriate to dismiss these claims with prejudice as Hester is entitled to qualified immunity in her individual capacity. *See* Fed. R. Civ. P. 41(a)(2) (providing that, except as provided under Fed. R. Civ. P. 41(a)(1), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.") As a government official performing a discretionary function, she enjoys qualified immunity – which is immunity from suit, not a mere defense to liability – provided that her conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (requiring a two-step analysis: (1) whether "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

12

conduct violated a constitutional right?" and, (2) if a constitutional violation is demonstrated, whether the constitutional right violated was clearly established.) Qualified immunity is ordinarily a question to be decided by the Court, and Plaintiff has the burden to demonstrate that the defendants are not entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224 (1991). Plaintiff fails to carry that burden in this matter.

Plaintiff avers that Hester is liable to him because, in her role with LFUCG, she was the individual most likely to have actual knowledge of the policy. The Court is not persuaded that she can be held individually liable to Plaintiff merely on the basis of her role with LFUCG and knowledge of the policy. Further, even if that was sufficient, the Court has already determined that Plaintiff cannot bear his burden to establish that the policies and procedures in place caused a violation of his constitutional rights. Hester is entitled to qualified immunity and judgment as a matter of law in her individual capacity.

**VI.**

For all of the reasons stated above, Plaintiff's motions for leave to file a response on paper and for leave to file his Response out of time and Defendants' Motion for Summary Judgment

13

shall be granted.   Plaintiff's claims shall be dismissed with prejudice.

Accordingly, **IT IS ORDERED**:

(1)   That Plaintiff's Motion for Leave to File in Paper [DE 92] is **GRANTED**;

(2)   That the Clerk shall **FILE** Plaintiff's tendered materials in the record of this matter;

(3)   That Plaintiff's Motion for an Extension of Time to File Responses is **GRANTED**;

(3)   That the tendered documents are timely filed.

(4)   That Defendants' Motion for Summary Judgment [DE 91] is **GRANTED**.   Judgment shall issue by separate order.

This the 8th day of June, 2015.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge